Strong, et al., v. The Phœnix Ins. Co.

GEO. P. STRONG AND THOS. T. GANTT, Appellants, *vs.* THE PHŒNIX INSURANCE COMPANY, Respondent.

|  |  |
|---|---|
| 62 | 289 |
| 31a | 410 |
| 31a | 413 |
| 33a | 211 |
| 33a | 212 |
| 62 | 289 |
| 40a | 61 |
| 62 | 289 |
| 116 | 643 |
| 54a | 506 |
| 62 | 289 |
| 123 | 54 |
| 62 | 289 |
| 135 | 392 |
| 62 | 289 |
| 140 | 689 |
| 62 | 289 |
| 145 | 567 |
| f151 | 390 |

1. *Re-insurer bound by judgment against original insurer, when.*—Where judgment is rendered against the original insurer, and he has contested the suit with the advice or acquiescence, and for the benefit of, the re-insurer, the latter will be bound by the judgment, and for the costs and expenses incurred in the defense, although not made a party on the record.

2. *Evidence—Record, insertion of, in pleadings—Introduction in evidence.*—The rule is well settled, that where a record is admissible for any purpose, it may be inserted in the pleadings, or it may be introduced in evidence with the same effect.

3. *Judgment—Privies not parties, bound by, when.*—Where one is bound to protect another from liability, he is bound by the result of a litigation to which such other is a party; provided, he had notice of the litigation, and opportunity to control and manage it.

4. *Re-insurer liable solely to re-insured.*—There is no privity between the one originally insured and the re-insurer; and the liability over of the re-insurer is solely to the re-insured.

## *Appeal from St. Louis Circuit Court.*

### *Geo. P. Strong,* for Appellants:

I. The defendant had a common interest with the United States Insurance Company in the questions involved in the suit of Henning & Woodruff vs. The U. S. Ins. Co., and having had notice of the suit, and having participated in the defense of it, is concluded by the judgment in that case, and in this suit the record of the proceedings and judgment may not only be pleaded by way of estoppel, but it is conclusive (unless impeached for fraud and collusion) against the defendant upon the questions involved, to-wit; 1st, whether the U. S. Ins. Co. had a cargo risk for Henning & Woodruff in excess of $60,000, to the extent of $20,000, and 2d, whether they had become liable on account of the loss of the goods thus insured.

These questions, having both been decided in the affirmative, cannot be tried over again in this suit. The defendants here were in privity with the defendants in that suit, and were virtually parties to it. (1 Greenl. Ev., 7th ed., §§ 523, 539, 535; Costle vs. Noyes, 4 Kern. [14 N. Y.] 331–32; -

Beers vs. Pinney, 12 Wend., 359; Hamilton vs. Cutts, 4 Mass., 353; 1 Stark. Ev., 6th Am. ed., 220–21; 2 Phil. Ev. [Cow. & Hill, notes], pp. 8, 9, notes; 131, *n.*; Leather vs. Poultney, 4 Binn., 352–62; Littleton vs. Richardson, 34 N. H., 179, 187; Wells vs. Nicholls, 17 Pick., 543; State to use vs. Coste, 36 Mo., 438; 2 Phil. Ev., pp. 10, 12, 18, 27, 34, 37, 38; Clark vs. Carrington, 7 Cranch., 321 [2 Curtis, 550]; Kip vs. Bingham, 7 J. R., 173; Bender vs. Fromberger, in note, 4 Dall., 436; Walker vs. Ferrin, 4 Vt., 523–30; N. Y. Mar. Ins. Co. vs. Protec. Ins. Co., 1 Sto. C. C. R., 458–60; Herman Estop., 44–50, §§ 51–8; Bigelow Estop., 59, 61, 65, 66; Robbins vs. City of Chicago, 4 Wall., 657–660; Lovejoy vs. Murray, 3 Wall., 18; Doty vs. Brown, 4 Comst., 73; Id., 5 Denio, 517; Tarlton vs. Tarlton, 4 Maule & Sel., 20; Howard vs. Mitchell, 14 Mass., 241; Id., 17 Mass., 365; Rapelye vs. Prince, 4 Hill., 123.)

II. This is a contract of re-insurance; that is, the defendants have insured the United States Ins. Co. to the extent of $20,000, upon a risk or insurance taken by the United States Ins. Co. for Henning & Woodruff. Hence, if the United States Ins. Co. was liable, the defendant is also liable. That fact having been once found in a judicial investigation, of which defendants had notice, has become *res adjudicata*, and cannot be re-investigated or disputed by defendants. (See authorities above cited, especially, State, etc. vs. Coste, 36 Mo., 438; Id., 46 Mo., 448; Phil. Life Ins. Co. vs. Am. Life Ins. Co., 23 Penn. St., 67; Doty vs. Brown, 4 Comst., 73; Com. Ins. Co. vs. Globe Mut. Ins. Co., 35 Penn. St., 479.)

The judgment in the former case was properly pleaded, and it was error to strike it out. Though it might be given in evidence without being pleaded, yet, when pleaded, it operates by way of estoppel, and can only be defeated by showing that it was recovered by fraud or collusion. (2 Phil. Ev., 34–38; Kilhefew vs. Herr, 17 Serg. & R., 322; 13 Id., 246; Howard vs. Mitchell, 14 Mass., 241; 17 Id., 365; Church vs. Leavenworth, 4 Day, 274.)

It is pleaded in the following cases cited above : Barney vs. Dewey, 13 J. R., 244; Beers vs. Pinney, 12 Wend., 309 ; Kip vs. Bigelow, 7 J. R., 167, 173 ; Tarlton vs. Tarlton, 4 Maule & Sel., 20 ; Robbins vs. City of Chicago, 4 Wall., 657 ; Howard vs. Mitchell, 14 Mass., 241.

III. A re-insurer's contract is separate and distinct from that of the first insurer (it does not affect, or benefit the first party insured), and he is bound to pay the amount stipulated therein, whether the first insurer pays or not.

The party first insured has no interest in the contract of re-insurance. (Emeregon, pp. 13, 2, 276, 201-2; 1 Park Ins., 1, 46, (Ins. a Cont. of Indem.); 1 Arnold [Ed. 1849], 2, 268, 288 ; 2 Park Ins., 595-96, (an independent contr.); 1 Pars. Marine Ins., 297-300 ; Hastie vs. DePeyster, 3 Caines, 190 ; N. Y. State M. Ins. Co. vs. Prot. Ins. Co., 1 Sto. C. C., 460 ; The Eagle Ins. Co. vs. Lafayette Ins. Co., 9 Ind., 443 ; Home vs. Mut. Safety Ins. Co., 1 Sandf. [N. Y.], 144.)

*Glover & Shepley, with Martin & Lackland,* for Respondent.

I. The motion to strike out was properly sustained.

1st. There is no privity of contract between the original insured and the re-insurer. In an action against the re-insurer the latter has the right to make the same defenses which could have been made by the insurer. (Yonkers Fire Ins. Co. vs. Coffman, 6 Robertson, 316 ; N. Y. Central Ins. Co. vs. Nat. Pro. Ins. Co., 20 Barb., 468.)

2d. The original insurer is not bound to wait till judgment against him, or until he has paid the claim against him, before suing the re-insurer. (Home vs. M. L., 1 Sandf., 137; S. C., 2 Comst., 232 ; Eagle Ins. Co. vs. Lafayette Ins. Co., 9 Ind., 443 ; Herckenrath vs. Am. Ins. Co., 3 Barb., Ch. 63 ; Blackstone vs. Allemania, 4 Daly, 299 ; *In re.* Republic Ins. Co., 8 Bank Reg., 197 ; Norwood vs. Resolute, 47 How. Pr., 43.)

3d. The contract of re-insurance is not a contract of indemnity in any other sense than the contract of insurance is

a contract of indemnity. It operates on the property covered by the original contract of insurance, and the interest of the original insurer in the property rests upon his contract of insurance. (New York Bowery Fire Ins. Co. vs. New York Fire Ins. Co., 17 Wend., 359; Phill. Ins., § 498; Flanders, Ins., p. 37; McKenzie vs. Whitworth, 3 Cent. L. J., 188.)

II. The record of judgment was properly excluded. The respondent was not a party to it, nor privy to it. (Rapelye vs. Prince, 4 Hill, 119.)

III. The relation which respondent bore to the contract of original insurance was not of such a character as rendered the judgment against the first insurer binding on the re-insurer. The re-insurer was not bound to come in and defend. Notice to the re-insurer of the pendency of the suit did not make the result of the action binding on the re-insurer. He was not a warrantor nor guarantor or surety. The cases cited in 2 Phill. Ev., 9, do not apply to the contract of re-insurance.

IV. The agreement to pay the judgment could possibly discharge the office of notice to the re-insurer; but notice did not make the re-insurer privy to the record. The record is competent evidence against the re-insurer only in an action on the separate and distinct agreement offered in evidence. But this action was not founded on the agreement. Therefore, the record was properly excluded.

WAGNER, Judge, delivered the opinion of the court.

This was an action upon a policy of insurance, brought by the plaintiffs as assignees of the party to whom the policy was issued. It appears from the petition, that in April, 1864, The United States Insurance Company, by its open policy, caused the firm of Henning & Woodruff to be insured, lost or not lost, upon all shipments made to them at and from all ports and places on the Mississippi river and its tributaries, against the perils of the seas, rivers, fires, jettisons, and assailing thieves; that on the 9th of June, 1864, the firm of William Butler & Co., a firm identical with Henning & Woodruff, shipped on the steamer Progress 700 bales of cotton, of

the value of $280,000, at the mouth of Red River, to be de-
livered at Cairo; and that in the latter part of the same day
the cotton was destroyed by fire, which was one of the perils
insured against by the United States Insurance Company.

It is further alleged, that on the first of November, 1863,
the defendant, the Phœnix Insurance Company, issued to the
United States Insurance Company a policy of re-insurance,
whereby it caused the United States Insurance Company to
be insured, lost or not lost, in respect to all cargo risks taken
or to be taken of the United States Insurance Company, from
any point to any point on the Mississippi river and tribu-
taries below St. Louis, as to any excess of such risks over
$60,000, and not exceeding $80,000; that the risks, against
which the defendant thus re-insured the United States In-
surance Company were among other things, those of the seas,
rivers and fires.   There was an averment of loss by which
the defendant became liable for the amount of the re-insur-
ance, and that the fact of such loss was communicated to the
defendant.

The petition then contained certain allegations relating to
legal proceedings in the circuit court of the United States by
Henning & Woodruff against the U. S. Insurance Com-
pany, which allegations were as follows: "And the said de-
fendant then and there, to-wit, at St. Louis, on the 18th of
July, 1864, did request and counsel the said United States In-
surance Company to resist the demand of the said Henning
& Woodruff against the said United States Insurance Com-
pany in respect of the said cotton so destroyed by fire as
aforesaid on board of the said steamer Progress ; and there-
upon the said United States Insurance Company did resist
the demand of the said Henning & Woodruff, and did defend
the same, and after a tedious litigation, to which the defend-
ant was from first to last privy, the said Henning & Wood-
ruff, by their surviving partners, Henning & Pearce, did re-
cover against the United States Insurance Company, on the
24th of September, 1872, by the judgment of the circuit court
of the United States, for the district of Missouri, at the Sep-

tember term, 1872, thereof, as well the sum of one hundred and seventy-eight thousand two hundred and eighty dollars for their damages, as their costs in that behalf expended, on account of the said loss of the said cotton, so as aforesaid destroyed by fire on the steamboat Progress, on the 9th of June, 1864, all of which will and doth appear by the record of said judgment in said court remaining. And the amount so recovered as damages, as aforesaid, was made up and composed of the principal sum of one hundred and twenty thousand dollars ($120,000), and interest thereon from the 21st of August, 1864."

The foregoing allegations were by the court stricken out.

After these allegations were stricken out of the petition, the defendant answered, denying all its material averments, admitting, however, the execution and delivery of their own policy of re-insurance. A certain agreement or stipulation was then introduced by the plaintiffs, signed by certain re-insuring companies, the defendant among the number, which stated that a claim was made upon the U. S. Insurance Company, under an open policy and agreement of Henning & Woodruff with said insurance company, for the sum of one hundred and twenty thousand dollars for cotton burned on the steamer Progress, on the Mississippi river, on or about the 9th day of June, A. D., 1864; and as each of the companies, signing the agreement, was bound and liable to the United States Insurance Company to the amount of twenty-thousand dollars on cotton, for which it was liable, as re-insured to it, to that amount each; and as it was believed both by the United States Insurance Company and the re-insuring companies, that said claim was illegal and unjust, and that they desired that the same should be resisted and defended; they, therefore, for that purpose, in consideration of the premises, agreed with the United States Insurance Company that it should retain and employ such counsel as it might deem proper to consult, and manage the defense, and that. in case the United States Insurance Company was successful, and should not be made liable for the claim, then they would

each pay their *pro rata* proportion of the attorneys' fees and costs; and in case the United States Insurance Company should fail in its defense and be made liable by the judgment of the court, they would each pay their equal *pro rata* proportion of such claim and judgment, and of the attorneys' fees and costs. After the submission of this agreement, some parol evidence was heard, and the plaintiffs then offered the record of the suit and judgment in the United States Court between Henning & Pearce as plaintiffs, and the United States Insurance Company as defendant. This record was excluded by the court, and the plaintiffs took a non-suit, which the court refused to set aside.

From the foregoing statement it will be seen, that the material issues in the case involve the action of the court in striking from the pleadings the allegations relating to the record of the suit in the United States Court, and in excluding the same record when offered by the plaintiffs at the trial. In the first place, the record of the judgment was set up in the petition, and after it was stricken out it was offered in evidence on the trial. The rule is well settled, that where the record is admissible for any purpose, it may be used in either of those modes. It may be inserted in the pleadings, or it may be introduced in evidence with the same effect. The general principle is, that parties only are concluded and bound by a judgment, but the term "parties" is not restricted so as to exclude all who do not appear upon the record; but it includes all who have a direct interest in the subject matter of the suit, and have a right, and have also had an opportunity to make a defense or control the proceedings. (State vs. Coste, 36 Mo., 438; 1 Greenl. Ev., § 523.) The rule may be succinctly stated thus: Where one is bound to protect another from a liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the litigation, and opportunity to control and manage it. This is the doctrine deduced from the whole current of authorities on this subject. The qualification, however, is, that where it is sought to make the judgment an estoppel,

the litigation must have been carried on without fraud or collusion, and conducted in a reasonable manner. (Mois Le Blanch vs. Wilson L. R., 8 Com. Pl., 227; 2 Phil. Ev., 4th Am. ed., 9, note.) The rule is so well established, and the authorities are so numerous that it is unnecessary to cite them. One of the latest cases, however, in the highest court of this country, may be noticed. In Robbins vs. The City of Chicago (4 Wall., 657; S. C., 2 Black., 418), one Woodbury had recovered a judgment for a large sum against the city of Chicago, as damages for personal injuries caused by falling into a hole or an area in the sidewalk, dug or made by Robbins in front of his premises, and by him negligently left unguarded. The city paid the judgment and sued Robbins for the amount so paid. When the Woodbury action was pending, the attorney for the city applied to Robbins to assist him in procuring testimony, and Robbins did so. On the day of the trial, and before the trial was commenced, the same attorney notified Robbins that the cause was about to be tried. On these facts it was held that Robbins was bound by the judgment obtained by Woodbury against the city. It was expressly so held on the principle stated in the opinion, that Robbins " knew the suit was pending and could have defended it." In writing the opinion of the court, Mr. Justice Clifford said: "Knowledge of the pendency of the suit in the most authentic form was brought home to him (Robbins), and the legal presumption is, that he was answerable over to the corporation, and if so, it must also be presumed, that he knew that he had a right to defend the suit."

But there is a question underlying this, and that is, to find and determine in what relation the insured stood to the re-insuring company, the defendant. Mr. Parsons says that, in all cases of re-insurance, whatever may be their ground, the re-insured stands, as to his insurers, in the same relation in which the original insured stands to him. The re-insurers may make the same defenses against him, which he could make against the original insured. (1 Pars. Mar. Ins., 299.)

The contract of re-insurance is totally distinct from, and unconnected with, the primitive insurance; the original assured

having no kind of claim against the re-insurer, and the re-assured remains solely liable on the original insurance, and alone has a claim against the re-insurer. Therefore, where the original insurer becomes bankrupt, and the assured only gets a small dividend out of his estate, the re-insurer is still liable to pay the whole amount of the re-insurance to the assignees of the original insurer, without deducting the dividend; and the original assured has no claim upon them in respect of the money so paid. (1 Arnold Ins., § 119; 3 Kent Com., 279.) It thence follows, that there is no privity between the original assured and the re-insurer, and that the liability over of the re-insurer is exclusively and solely to the re-insured.

We cannot find any case where this precise question now presented has ever been determined, but there are cases involving similar principles.

In the case of the N. Y. St. Mar. Ins. Co. vs. Protec. Ins. Co. (1 Sto., 458), the plaintiffs in the action had insured the brig Evelina for a certain voyage, and afterwards re-insured in the defendant's corporation. During the voyage insured, the vessel sustained damage by perils insured against, and the owners claimed of the insurers, the plaintiffs, a total loss which they refused to pay; and an action being brought, it was decided that there was a liability for a partial loss only. The plaintiffs then claimed of their re-insurers, the defendants, the amount they were obliged to pay to the owners by reason of the judgment, and also the costs and counsel fees incurred in defending the suit. The defendants, the re-insurers, paid the judgment, but refused to pay the counsel fees and the expenses of the suit; the court held that they were liable and gave judgment for the plaintiffs. Mr. Justice Story examined the case with his accustomed learning and affluence of argument, and in his opinion, said: "This is a case of re-assurance, and nothing is clearer upon principle and authority than that, in such a case, the re-assurers are entitled to make the same defense, and to take the same objections, which might be asserted by the original insurers, in a suit upon the

·first policy. ·The consequence would seem to be, that, as no voluntary payment by the original insurers would be bind- ·ing or obligatory upon the re-assurers, they are compellable to resist the payment; and to require the proper proofs of loss from the assured in a regular suit against them, so as to protect themselves by a *bona fide* judgment to the amount of the recovery against them, under their re-assurance " * * *
·" Now, it is precisely in this view, that the consideration of ;notice of the suit becomes most important, even if it be not, (as I am not prepared to say that it is) indispensable. If no- ·tice of a suit threatened, or pending upon the original policy, :be given to the re-assurers, they have a fair opportunity to exercise an election, whether to contest or admit the claim. It is their duty to act upon such notice, when given, within a reasonable time. If they do not disapprove of the contes- tation of the suit, or authorize the party re-assured to com- promise or settle it, they must be deemed to require that it should be carried on, and then, by just implication, they are held to indemnify the party re-assured against the costs and expenses necessarily and reasonably incurred in defending the suit. If they decline to interfere at all, or are silent, they have no right afterwards to insist that the costs and expenses of the suit ought not to be borne by them, as they are exclu- sively, under such circumstances, incurred for the benefit of the re-assurers, and are indispensable for the protection of the party re-assured."

In Hastee vs. DePeyster (3 Caines, 190) it was decided, that the re-assurer was liable to the assurer for all costs, *bona fide* expenses, etc., incurred in defending the suit, by the ori- ginal underwriters, especially when, with notice of its going on, he stood by, and did not offer to settle; for as the re- assurer was entitled to every defense against the insurer which he might urge against the primitive assured, it became neces- sary for the original underwriter to show he had been obliged to pay on a just claim against him, and he would be entitled to interest on all he had expended and paid.

Now, it seems to me that these cases are not only satisfactory, but that they are conclusive of the question here involved. If a *bona fide* judgment is rendered against the original insurer, and he has contested the matter in good faith for the protection of the re-insurer, and the latter is bound to pay the costs and expenses incurred for his benefit, why is he not equally bound by the judgment? It would be a singular position to take, to say that the re-insurer was bound by the incident and not by the principal. The contest is carried on by his consent or acquiescence, and for his benefit and protection, and if good faith is observed, can there be any reason why the identical question should be litigated twice?

The re-assured and the re-insurer stand in the precise relation of all other parties, where there is a liability over, and the result of one litigation binds or concludes both. There is but one matter in issue which is alike common to both, and that is, whether a loss has occurred, and a debt has accrued to the original insured.

The defense is the same, whether made by the primitive insurer or the re-insurer.

If the insurer fails in his defense, he has his recourse over against the re-insurer. The re-insurer is bound to protect the original insurer to the extent of his policy. Both then are equally alike interested in the determination of the suit. The re-insurer then comes precisely within the rule heretofore laid down, that where one is bound to protect another from a liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the litigation, and an opportunity to manage and control it.

There was evidence tending to show that the defendant had notice of the suit brought by Henning & Pearce, as surviving partners of Henning & Woodruff, and there was an allegation in the petition, which was stricken out, that they were privy to that suit, and assisted in its management. The court further excluded the testimony of Mr. Bodley, to show that defendants had due notice, and then ruled out the judgment.

In all this, we think, there was manifest error, and the judgment should be reversed and the cause remanded. Judges Napton and Sherwood concur. Judges Vories and Hough absent.