*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VELOCITY INVESTMENTS LLC,

          Plaintiff/Counterdefendant-Appellee,

v

RASHARD JONES,

          Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
May 13, 2025
11:03 AM

No. 369122
Oakland Circuit Court
LC No. 2023-198840-CZ

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

Defendant, Rashard Jones, borrowed $45,000, paid back $6,751, and then defaulted. After Jones's default, the charge-off balance on the remaining debt was $46,945.19. In January 2020, plaintiff, Velocity Investments LLC ("Velocity"), in its capacity as a debt-collection firm, received an assignment of the Jones debt. Velocity filed suit against Jones to collect the debt, and ultimately obtained summary disposition and a judgment in the amount of $46,945.19, augmented by its costs of $1,373.81 and a statutory attorney fee of $75, for an award of $48,394. On appeal, Jones argues that the summary disposition award and the judgment are invalid because Velocity had no right to file this action seeking recovery of the debt. We affirm.

## I. FACTUAL BACKGROUND

In 2018, Jones applied for a loan through an application with Upstart Network, Inc. (Upstart Network). Although Cross River Bank funded the loan, Upstart Network serviced the loan under a loan-program agreement between the two entities. The principal sum of the loan was $45,000. Jones electronically signed an approval-disclosure form and a promissory note on October 8, 2018. Jones defaulted on the loan after repaying approximately $6,751. The charge-off balance on the loan was $46,945.19 on the charge-off date of December 8, 2019.

On January 13, 2020, Velocity entered into a joinder agreement with Upstart Network, as the initial seller and servicer, and MPLI Capital Holdings, named as an additional seller. Velocity was a party to that agreement as the "purchaser." On January 28, 2020, a bill of sale assigning the Jones debt (along with other debts) to Velocity was signed by Upstart Network as the initial seller and servicer "on behalf of MPLI Capital Holdings." Then on July 31, 2020, Cross River Bank (as

-1-

"transferor") and Upstart Network (as "transferee") signed a transfer certificate stating that Cross River Bank "transferred, assigned, and conveyed" to Upstart Network "all right, title, and interest" that Cross River Bank held in the Jones loan and other loans listed on an attached exhibit.

On February 16, 2023, Velocity sued Jones, seeking judgment in the amount of $46,945.19. On May 5, 2023, Jones filed a counterclaim requesting damages and alleging that Velocity did not receive a valid assignment of the debt. Velocity moved for summary disposition pursuant to MCR 2.116(C)(9) (opposing party has failed to state a valid defense) and (C)(10) (no genuine issue as to a material fact) on its claim as well as dismissal of Jones's counterclaim under MCR 2.116(C)(8) (opposing party has failed to state a claim on which relief can be granted) and (C)(10). Velocity also requested a judgment in the amount of $46,945.19 as well as costs and statutory attorney fees. Jones responded that Velocity had not offered any evidence that it was properly assigned the loan. Jones further asserted that there was no valid chain of title from the parties, including the original lender, Cross River Bank.

After oral argument on December 6, 2023, the trial court found that there was a clear chain of title and entered an order awarding Velocity summary disposition on its claim against Jones and entering judgment in the amount of $48,394, i.e., the principal amount of $46,945.19, costs totaling $1,373.81, and a statutory attorney fee of $75. The trial court also dismissed Jones's counterclaim. This appeal of right followed.

## II. LEGAL ANALYSIS

On appeal, Jones contends that Velocity lacks standing to seek collection because the chain of title to his loan was broken. Jones further asserts that the trial court erred by granting summary disposition to Velocity because genuine issues of material fact remain. We shall address those two arguments in turn.

## A. STANDING

As a threshold matter, Jones challenges Velocity's standing to pursue collection of the debt. Whether Velocity has standing constitutes a question of law that this Court reviews de novo. *Glen Lake–Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 527; 695 NW2d 508 (2004). The Michigan Constitution "requires that a plaintiff possess standing before a court can exercise jurisdiction over that plaintiff's claim." *Miller v Allstate Ins Co*, 481 Mich 601, 606; 751 NW2d 463 (2008). The standing doctrine directs courts to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy. *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). A litigant has standing to sue whenever there is a legal cause of action. *Id*. at 372. And if a cause of action is not provided at law, a litigant may have standing to sue "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Id*.

Jones insists that his debt was not transferred or assigned by Cross River Bank to Velocity. We have described the roles of the parties, including the fact that Upstart Network was the servicer and initial seller of the debt and it was assigned title to the debt by Cross River Bank, as confirmed

-2-

by the certificate signed by both parties on July 31, 2020. The bill of sale of the debt from Upstart Network to Velocity is dated January 28, 2020, which was six months before the acknowledgement of the assignment of the Jones debt from Cross River Bank to Upstart Network, but the assignment of title and the sale of the debt both took place years before Velocity filed suit in this case.

Jones contends there was a break in the chain of title because Upstart Network did not own the debt until six months after the bill of sale. That contention is groundless. The October 8, 2018 loan agreement (including the promissory note and the approval disclosure) identifies Cross River Bank as the loan originator and Upstart Network as the servicer. Those roles are delineated in the July 31, 2020 transfer certificate signed by Cross River Bank and Upstart Network. The transfer certificate explained that Cross River Bank had "transferred, assigned, and conveyed" to Upstart Network "all right, title and interest" that Cross River Bank held "in each Loan." It is undisputed that Jones defaulted on his loan after making modest payments and the charge-off balance on the debt remaining was $46,945.19. On January 13, 2020, the joinder agreement ("purchase and sale agreement") stated that Upstart Network was the servicer and initial seller, MPLI Capital Holdings was an additional seller, and Velocity was the purchaser of the debt. Those three entities all signed the joinder agreement. The bill of sale dated January 28, 2020 established that Velocity purchased the debt for the Jones loan that ended in "7077" from Upstart Network on behalf of MPLI Capital Holdings. The effective date of the assignment was January 30, 2020.

Jones claims that the bill of sale was invalid and MPLI Capital Holdings could not transfer the debt to Velocity, but MPLI Capital Holdings was not the seller to Velocity. Deanna Sgro, who oversees licensing and regulatory compliance for Velocity Portfolio Group (which owns Velocity), testified about how Velocity collected on the debt from the Jones loan. Specifically, Sgro testified that Velocity "purchased this account in or about January 30 of 2020." Providing background for the transfer, Sgro explained that the originator of the loan, i.e., Cross River Bank, initially sold the Jones loan to an investor pool, i.e., MPLI Capital Holdings, which became "a party to the sale [of the Jones loan] to Velocity." That sale was accomplished through Upstart Network. Hence, MPLI Capital Holdings had ownership or control of the Jones debt at the time that it was sold "by Upstart Network, Inc., as the servicer, to Velocity as the purchaser." In other words, Cross River Bank initially sold the debt through Upstart Network to MPLI Capital Holdings, and, in January 2020, Upstart Network acted "on behalf of MPLI Capital Holdings" in assigning that debt to Velocity. Upstart Network had the authority to sign on behalf of any investor and controlled the Jones loan as the servicer "at all material times" from "conception to completion" or until it was assigned to Velocity by the bill of sale.

The preamble of the bill of sale incorrectly identified MPLI Capital Holdings as the initial seller, but the signature portion of the bill of sale correctly identifies Upstart Network as the initial seller and servicer on behalf of MPLI Capital Holdings. Contrary to Jones's claim, the bill of sale was not false. Sgro clarified that the bill of sale was effective despite the typographical error in its preamble, where it mistakenly identified MPLI Capital Holdings as the initial seller. Beyond that, on January 30, 2020, Upstart Network sent an e-mail to Jones stating that his loan had been sold to Velocity and was no longer being serviced by Upstart Network. Jones was advised to contact Velocity "to establish new payment arrangements" for the outstanding debt, totaling $46,945.19. The documentary evidence is sufficient to establish the chain of title and Upstart Network's intent to assign the debt to Velocity. Accordingly, Velocity has standing to pursue a claim against Jones to collect on his debt.

## B.  SUMMARY DISPOSITION

Jones argues that the trial court erred by granting summary disposition to Velocity because genuine issues of material fact remain.  Velocity moved for summary disposition of its claim under MCR 2.116(C)(9) and (C)(10) and of Jones's counterclaim under MCR 2.116(C)(8) and (C)(10).  In response to Velocity's motion for summary disposition, Jones moved for summary disposition under MCR 2.116(I)(2).  The trial court did not identify the subrule of MCR 2.116(C) it employed to grant relief to Velocity, but the trial court did not restrict its analysis to the information in the pleadings.  Instead, the trial court considered all of the evidence presented.  Because the trial court relied on documentary evidence beyond the pleadings in resolving Velocity's motion for summary disposition, this Court must review the trial court's ruling under the standards for a motion under MCR 2.116(C)(10).  *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

We review de novo the trial court's decision to grant summary disposition to Velocity.  *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim."  *Id*. at 160.  "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion."  *Id*.  Such a motion "may only be granted when there is no genuine issue of material fact."  *Id*.  A genuine issue of material fact exists "when the record leaves open an issue upon which reasonable minds might differ."  *Id*. (quotation marks and citation omitted).  In our analysis, all reasonable inferences must be drawn in favor of the nonmoving party.  *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010).

Here, the trial court observed that the outcome of Velocity's summary disposition motion turned on whether a clear assignment of the loan occurred.  Furthermore, the trial court ruled that the evidence accompanying the pleadings established a clear chain of title and that Jones did not dispute his obligation on the loan.  As we have already explained, the chain of title was adequately documented, thereby empowering Velocity to collect the debt.  Because defendant's challenge on that basis is unavailing, the trial court properly granted summary disposition and entered judgment in favor of Velocity.

## C.  RESPONSE TO THE DISSENT

The dissent contends that "[t]his case has a statute of frauds problem, which manifests as a standing problem."  Specifically, the dissent notes that "[n]o party was able to produce the written agreement assigning the debt from Cross River Bank . . . to Upstart Network, Inc. . . ., the earliest assignment in the chain of title that supposedly ends with Velocity[,]" so "[w]ithout that document, the assignment to Velocity is invalid, and it does not have standing to sue."  Therefore, the dissent reasons that summary disposition under MCR 2.116(C)(10) was improperly granted to Velocity.

"Under Michigan law, '[a]n assignment is a contract between the assignor and the assignee . . . .' "  *Macomb Interceptor Drain Drainage Dist v Kilpatrick*, 896 F Supp 2d 650, 658 (ED Mich, 2012), quoting *Burkhart v Lapham*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2010 (Docket No. 291705), p 3.  "It is a long-standing rule in Michigan that an individual who is not a party to an assignment lacks standing to challenge that assignment."  *Davis v M & T Bank*, unpublished per curiam opinion of the Court of Appeals, issued June 7, 2018

(Docket No. 338705), p 2, citing *Bowles v Oakman*, 246 Mich 674, 678; 225 NW 613 (1929).  And as our Supreme Court long ago decided and this Court more recently reaffirmed, an obligor "lacks standing" to challenge an assignment "where the parties to the assignment . . . do not contest its validity."  *Pashak v Interstate Hwy Constr, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 1998 (Docket No. 189886), p 2, citing *Woods v Ayers*, 39 Mich 345 (1878).  These well-settled principles make good sense because they ensure that an assignee has a legal right to proceed against an obligor when the obligor undoubtedly is indebted to someone, and the assignor and the assignee agree that that someone is the assignee, not the assignor.  This case presents a classic example of that situation, where no injustice or legal transgression will be visited upon the obligor, i.e., plaintiff, by the collection of the debt by the one and only party that the assignors and the assignees agree has the right to collect the debt.

Affirmed.

/s/ Christopher P. Yates
/s/ Anica Letica