GANTT v. THE AMERICAN CENTRAL INSURANCE COMPANY, *Appellant.*

1. **Re-insurance**: RIGHTS AND DUTIES OF THE PARTIES TO THE CONTRACT: JUDGMENT: NOTICE. An insurer whose risk is re-insured, is not obliged, in order to maintain his action against his re-insurer, to show that he has paid the loss. He may at once resort to his action against the re-insurer, and to such action the re-insurer may make the same defense that the re-assured could make against the original assured, or the re-assured may await a suit by the first assured, and when it is brought give notice of it to his re-insurer. If the re-insurer desires the claim contested, he may take part in the defense. If he neither participates in the defense, nor gives notice that he does not object to the claim, he will be taken to have required the re-assured to defend for him, and the latter becomes, by operation of law, *sub modo*, his agent for that purpose. If the re-assured then defends in good faith, the judgment will be binding upon the re-insurer as to all matters which could have been litigated therein, and will make him liable for the costs and expenses of the litigation; but no judgment collusively obtained will support a recovery against the reinsurer.

2. ———: AGREEMENT FOR RESISTANCE CONSTRUED. An insurance company having re-insured in other companies part of a risk on a boat load of cotton, and being about to be sued by the insured for a loss, entered into an arrangement with the re-insuring companies, by which it was agreed that the first insurer should employ such counsel as it saw proper, to defend the suit, and in the event the defense should be successful the re-insurers should pay their *pro rata* proportion of the attorneys' fees and costs, and in the event it should fail, they should pay their *pro rata* proportion of the judgment, attorneys' fees and costs. *Held*, that this agreement did not alter the relations of the parties to the contracts of re-insurance; that the re-assured undertook no new duty, and the re-insurers incurred no new obligation except the liability to pay a share of the expenses in the event of a successful defense; and this was merely supplemental in its nature and did not affect the policies; that the

agreement, at most, made the re-assured the agent of the re-insurers for the purpose of making the defense, and not a trustee for them; that it did not irrevocably commit the defense to the re-assured, but the re-insurers had the right at any time to come in and defend on their own behalf; that the attorneys employed by the re-assured represented the re-insurers in the conduct of the suit; and that there was nothing in the agreement which required the re-assured company to retain a pecuniary interest in the litigation, or forbade it from making a compromise of its liability.

3.    ———: COMPROMISE AGREEMENT CONSTRUED.    An insurance company having entered into an agreement such as the foregoing with several re-insuring companies, afterwards, pending the litigation, without their consent, compromised with the assured by paying a certain sum in cash and agreeing, in the event a judgment should be rendered in favor of the assured in the pending suit, to assign the policies of re-insurance to them.    The assured, on their part, agreed to enter satisfaction of any such judgment on receiving such assignments.    The contract further reserved to the re-assured company the right to continue the defense of the suit, and provided that the assured should retain the money paid even though they failed in their suit.    The assured subsequently recovered judgment, and the policies of re-insurance were then assigned to them, as had been agreed, and the judgment was entered satisfied.    The re-insuring companies had knowledge of this contract for about a month before the trial took place, but took no step to interpose any defense for themselves, or to prevent the re-assured company from making the defense.    In a suit upon one of the assigned policies brought by the trustees of the original assured; *Held*, that this contract created no conflict between the duty and the interest of the re-assured company; that all the re-insuring companies could demand was an honest defense of the suit, and the contract did not disable the re-assured from making this; that the fact that it no longer had any substantial interest in the controversy did not disqualify it from continuing the defense; that the re-insuring companies having failed to interpose must be considered as having acquiesced in its right to do so, and in the absence of evidence of want of good faith on the part of the re-assured company in making the defense, the re-insurers must be bound by the judgment.

4.    ———: MEASURE OF DAMAGES.    In an action on a policy of re-insurance the true measure of damages is not what the re-assured has paid the original assured, but what he is bound, under his policy, to pay by reason of the loss.

*Appeal from St. Louis Court of Appeals.*

This was a suit on a contract of re-insurance against loss by fire, brought by the plaintiffs, Gantt and Strong, as trustees for Hening & Pearce, surviving partners of the firm of Hening & Woodruff.

The facts are as follows: On the 9th day of June, 1864, Hening & Woodruff sustained a loss by fire of 700 bales of cotton, valued at $280,000, on the steamer Progress, on a voyage between the mouth of Red river and the mouth of the Ohio. They claimed to be insured with the United States Insurance Company, under an open policy and a supplementary verbal contract of insurance to the extent of $120,000. Several other companies, including the present defendant, had re-insured five-sixths of the risks of the United States Insurance Company, and the latter company claimed that the defendant, the American Central Insurance Company, had re-insured so much of any risk it might have on cotton as exceeded $100,000 and did not exceed $120,000, in other words, the sixth $20,000, of any risk it might have, and it claimed that if it was bound to Hening & Woodruff for $120,000, it had its recourse against the defendant for $20,000, and against each of the other four companies for a like amount. Under these circumstances, notice having been given of the loss, the United States convened the other five companies for the purpose of consultation. The result was that they all joined in a resolution to resist the claim. A contract embodying this resolution was signed on the 18th day of July, 1864. It was in the following terms:

" Whereas, a claim is made upon the United States Insurance Company, under open policy and agreement of Hening & Woodruff with said insurance company, for the sum of $120,000, for cotton burned on the steamer Progress, on the Mississippi river, on or about the 9th day of June, 1864; and whereas, each of the undersigned insurance companies is bound and liable to the said United States Insurance Company to the amount of $20,000 on any loss on cotton for which it is liable, as re-insured to it, to that

amount each; and whereas, it is believed both by said United States Insurance Company and the undersigned companies, that said claim is illegal and unjust, and the undersigned desire that the same shall be resisted and defended; now, therefore, for that purpose, in consideration of the premises, we agree with the said United States Insurance Company, that it shall employ and retain such counsel as it may deem proper to consult, and to manage said defense, and that in case said United States Insurance Company shall be successful, and shall not be liable upon or for said claim, then we will each pay our *pro rata* proportion of said attorneys' fees and costs, if any, and in case said United States Insurance Company shall fail in its defense and shall be made liable by the judgment of the court upon or for said claim, then we will each pay our equal *pro rata* proportion of such claim and judgment, and of the attorneys' fees and costs."

In pursuance of this agreement the United States Insurance Company employed counsel who defended the suits that were subsequently brought, and whose fees were paid from time to time by that company, the re-insuring companies reimbursing the latter their *pro rata* proportions. The United States company had entire control of the suits, the counsel consulting with them alone as to the conduct of them. Suit was at first brought in the State court, and after long litigation, culminated in a decision by the Supreme Court affirming a judgment of non-suit against the plaintiffs, and holding that the United Stated Insurance Company was not liable because the contract of insurance was not in writing. 47. Mo. 525. The plaintiffs, being citizens of New York, in 1871, renewed their suit in the United States Court. At the spring term, 1872, that court, overruling a demurrer to the petition, held that the verbal contract of insurance declared on was valid. 2 Dillon C. C., 27. An answer was then filed and the cause was continued to the fall term for trial.

In the meantime efforts were being made to effect a

compromise.   The American Central company always opposed that course, insisting on fighting it out to the bitter end.   On the 24th day of July, 1872, the following agreement was made between the United States company and Hening & Pearce :

" Whereas, Robert M. Hening and Albert Pearce, as surviving partners of Hening & Woodruff, claim that the United States Insurance Company, of St. Louis, Missouri, was liable to said Hening & Woodruff, and is liable to said survivors for and on account of cotton on the steamer Progress and some barges, in the year 1864, and have sued said insurance company in the circuit court of the United States   *   *   and said claim is denied and resisted, and a settlement of the judgment which may be rendered in said suit upon said claim, and also of any suit, judgment, claim or demand against the said United States Insurance Company on account of said cotton, is hereby made and agreed upon as between said insurance company and said Hening & Pearce, and, therefore, said company this day pays to said Hening & Pearce $22,000, and assigns to them its claim to the proceeds of cotton damaged on the steamer Des Arc, in 1864, which proceeds were in the hands of one D. H. Page, in his life-time, in New York.   Now, therefore, in consideration of the premises, the said Hening & Pearce, surviving partners of Hening & Woodruff, agree and bind themselves to release said United States Insurance Company from any judgment which may be recovered in said suit, or in any suit or procedure which may ever be had or made on said claim, or any part thereof against it.   But if any judgment shall be finally recovered in said suit, or in any suit or proceeding for or upon said claim against said company, then said company is to assign and transfer to said Hening & Pearce, or the survivors of them or their assigns or representatives all the claim and demand which it may have on the Phœnix Insurance Company, of St. Louis, the American Central Insurance Company, of St. Louis, the Globe Mutual Insurance Company,

of St. Louis, and the Security Insurance Company, of New York, in respect of the re-insurance claimed to have been effected by the United States Insurance Company with said companies respectively, on account of the risks taken by the United States Insurance Company on cotton for Hening & Woodruff, which assignments are to be received by Hening & Pearce, their assigns or representatives, in full of any judgment or claim against said United States Insurance Company, and in satisfaction thereof, and said Hening & Pearce shall only pursue any remedy they may elect and as they choose under such assignments, which assignments are to be without liability or recourse on said insurance company, provided, however, that in any action or proceedings under such assignments, said Hening & Pearce may use the name of said United States Insurance Company at their own cost, and protecting the company therefrom, if they elect to do so. But it is agreed and understood that nothing herein is to hinder or prevent the United States Insurance Company from defending or continuing fully and in all things to defend said suit, or any suit or proceeding for or on account of said claim. It is further understood that in case said suit is defeated and no recovery is had therein, yet said Hening & Pearce are to keep said $22,000, and said claims for moneys which were in the hands of Page, and not to refund or re-pay the same."

The present defendant was no party to this agreement and was not informed of its existence, until a week or more after it was made. Mr. Branch, the assistant secretary of defendant, hearing a rumor, that the United States company had settled, called at the office of the latter company and asked to be allowed to see the contract if it was in writing. Mr. Bodley, the secretary of the United States, replied that it was in writing, but declined to allow Mr. Branch to see it, unless he was specially deputized by his company for that purpose. On the following day, Mr. Branch returned with special authority from his company,

and was then permitted to see and examine the contract, but his request to be allowed to take a copy was refused. At these interviews Mr. Branch denounced the action of the United States company as a fraud upon the defendant. On consultation with its attorneys the defendant resolved to hold no further communication with the United States company, and none was held.

The suit of Hening & Pearce came on for trial in the following September, and on the 24th day of that month, resulted in a verdict and judgment for the plaintiffs in the sum of $178,280. The present defendant took no part in the defense of that suit, did not ask to take any part, nor ask for any change of attorneys, and did not, after February, 1872, contribute anything further towards payment of attorneys' fees; nor did it ask to be allowed to take an appeal. No appeal was, in point of fact, taken, and shortly after the judgment was rendered, in accordance with the compromise agreement, the United States company assigned to Gantt & Strong, the present plaintiffs, its claim on the supposed contract of re-insurance against the present defendants. The $22,000 named in the agreement, and the money in the hands of Page amounting to about $5,000, was paid at the time the agreement was made, together with the further sum of $7,000 which was furnished by the Marine, one of the re-insuring companies, in settlement of its liability. Gantt & Strong had been the attorneys of the claimants throughout the litigation, and received the assignment in trust for their benefit. The United States court was not advised of the compromise agreement at the time of the trial.

This suit was brought under the foregoing assignment. At the trial the foregoing facts were developed. The plaintiffs offered to prove in addition that the suit in the Federal court was defended as vigorously after the compromise as before, that the plan of defense was arranged long before and was faithfully carried out, and that no efforts to defeat the action were omitted. This evidence

was objected to by the defendant and was excluded by the court.

At the instance of the plaintiffs, the following instructions were given:

1. The judgment rendered in the circuit court of the United States in favor of Hening & Pearce, and against the United States Insurance Company, is conclusive as to the liability of the defendant in this case upon its policy of re-insurance, unless such judgment was obtained by fraud, or by collusion between said Hening & Pearce and said United States Insurance Company.

2. Fraud or collusion, cannot be presumed, but must be proved by evidence satisfactory to the jury, and the burden of proving fraud and collusion in the defense of the suit in the United States circuit court devolves on the defendant, but such fraud or collusion need not be proven by direct testimony, but may be inferred by the jury from all the facts and circumstances in the case as established in evidence.

3. If the jury find for plaintiffs, they will assess the damages at one-sixth of one hundred and seventy-eight thousand two hundred and eighty (178,280) dollars, and interest thereon at six per cent.

4. If defendant had notice of the agreement of July 24th, 1872, within ten or fifteen days after it was made, and with such knowledge acquiesced in the provision therein contained for defending the suit in the United States circuit court, or stood by and permitted said United States Insurance Company, or the attorneys employed by it, to go on and try said cause, and made no effort to secure any other attorneys, or to take control of said defense, then said agreement constitutes no defense to this action.

The following instructions were refused on the part of the defendant:

3. Under the agreement of July, 1864, and by its terms, the attorneys employed by the United States Insurance Company were not the attorneys of the defendant in

this case, nor is the defendant bound by the acts of the attorneys of that company.

4. The agreement of July 24th, 1872, is a fraud on defendant, unless defendant assented to it.

5. If the jury believe from the evidence that the agreement of date July 18th, 1864, was executed by the defendant with other companies, that afterwards, and under this agreement, defendant paid money, when called upon so to do by the United States Insurance Company, to said company, in order that it might defend the suit or suits brought by Hening & Woodruff against said United States company, and otherwise protect defendant's interest; and that under said agreement said United States Insurance Company went on for a time in good faith resisting said claim of Hening & Woodruff, and that afterwards, and on or about July 24th, 1872, the compromise agreement of that date was made between Hening & Woodruff, or its successors, and the United States Insurance Company, then the jury is instructed that said compromise agreement so made inured to defendant's benefit, and defendant has a right to claim the benefit of it; and if the jury further believe that under its provisions the United States Insurance Company was discharged from liability on its paying the sum of $27,000 and making the assignments in said agreement named, then the plaintiffs cannot recover in this case.

6. If the jury believe from the evidence that after the making and delivery of the agreement of July 24th, 1872, and the payment of the money named in that agreement by the United States Insurance Company to Hening & Pearce, or their agents or attorneys, the trial of the suit in the United States court came on, and the said United States Insurance Company, and its attorneys, failed to produce or bring to the knowledge of said court the said agreement of compromise, and the payment of the money under and according to it, then the said United States Insurance Company violated its agreement with defendant,

being the contract sued on, and the plaintiffs cannot recover in this case.

7.   The burden is on the plaintiffs in this case to show that the United States Insurance Company performed the contract of July 18th, 1864, fully and in good faith, and the jury is instructed that there could be no performance in good faith consistently with the agreement of July 24th, 1872, unless the defendant in this case knew of said contract at the time it was made, or afterwards, and agreed to be bound by its terms.

8.   If the jury believe from the evidence that the defendant did not assent or agree to the compromise of July 24th, 1872, made by and between the United States Insurance Company and Hening & Woodruff, or their successors, either before or after said compromise agreement was made between the parties thereto, then the jury will find for the defendant.   If at any time the defendant did, after it had become acquainted with the terms of said agreement, assent thereto, then said agreement of compromise inured to the benefit of the defendant, and the plaintiffs are not entitled to recover in this case.

10.   The jury are instructed that if, under the other instructions given in this case, they find the defendant liable, its liability is only for the sixth twenty thousand dollars.   In other words, this defendant is not liable till the United States Insurance Company has suffered a loss of over $100,000.   If the United States Insurance Company secured a discharge or release from its liability by paying $27,000, or any other sum or property, not amounting to $100,000, then the jury will find for the defendant.

11.   The jury are instructed that even if under the other instructions given in the case they find the defendant liable, its liability cannot in any event exceed one-sixth part of the amount paid by the United States Insurance Company, under the compromise of July 24th, 1872, that is, one-sixth part of $27,000, with interest.

12.   If the defendant did not assent or agree to the

compromise of July 24th, 1872, the jury will find for the defendant. And the burden of proof is on the plaintiffs to satisfy the jury that the defendant did assent or agree to said compromise.

[This instruction, No. 12, the court refused to give; and inserted the words " or ratify" after the words " or agree to," and gave the instruction as altered.]

13. By consent to the agreement of July 24th, 1872, is meant that assent and approbation of the defendant which is announced expressly or impliedly to the United States Insurance Company, after a full knowledge of its provisions. And if the jury find from the evidence that when said agreement became known to the American Central Insurance Company it objected and denounced the same as a fraud upon its rights,—then said American Central Insurance Company cannot be presumed to be assenting to said agreement or compromise by the fact that it had knowledge that the suit pending in the United States court was thereafter prosecuted to a judgment.

[This last instruction the court refused to give; but added the words " and never afterwards consented to it," after the words " as a fraud upon its rights," and gave the instruction with this interpolation.]

The following instructions were given for defendant:

4. If the judgment in the case of *Hening et al. v. The United States Insurance Company*, in the United States Court, was obtained in pursuance of the terms of the agreement of July 24th, 1872, then said judgment was fraudulently obtained, and is not binding on this defendant, unless the defendant, after it learned of said compromise agreement and its provisions, ratified or consented to it.

7. The agreement of July 24th, 1872, was a fraud on the defendant, and the jury will find for the defendant, unless they believe from the evidence that the defendant knew of said agreement and the provisions thereof, and

with such knowledge ratified the same or consented to the same.

9.    The jury is instructed that the fact that money was paid by the defendant to the United States Insurance Company, and by that company paid to its attorneys for legal services in the proceedings in the United States Court, did not render the attorneys of the United States Insurance Company the agents or the attorneys of the defendant, and no acts or omissions of said attorneys would or did in any way bind this defendant, the American Central Insurance Company.

The jury found for plaintiffs, and assessed the damages at $36,101.69. Judgment was entered on the verdict, and defendant appealed. The court of appeals affirmed this judgment, and defendant then appealed to this court.

*John H. Rankin* for appellant.

The plaintiffs relied on the agreement of July 18th, 1864, to establish the liability of defendant as a re-insurer. The foundation of that agreement was the trust and confidence reposed in the United States Insurance Company by the defendant. That company, for a period of eight years, went on and acted, and again and again received defendant's money under this trust, which it had assumed at its own suggestion and by its own desire. During all this time it had the sole management of the litigation, the defendant and the other re-insuring companies, relying upon it entirely. Suddenly, on the 24th day of July, 1872, without a word to defendant, the fraudulent compromise was made between the defendant's trustee and the common enemy, whom the United States Insurance Company had all along been fighting in good faith under the Sharp agreement. The defendant had distinctly and positively refused to make any compromise, or to pay one dollar: had told its trustee, the United States Insurance Company, that it would not compromise or pay; and in

the teeth of this, the trustee made the compromise, which it perfected by payments of money. Now what was the legal effect of this? It was,

1. That the United States Insurance Company did not perform the agreement of July, 1864; nay, more, they violated it in the worst way they could, by an act which was a fraud upon defendant's rights. If this be so, how can the plaintiffs recover, when, as above stated, he is forced to and does make that agreement the foundation of his case? We have the singular spectacle of plaintiffs producing, at one part of their case, a contract with the defendant as the only means by which they can get to the jury, and at another part of their case showing that they themselves (for they are in the assignors' shoes) violated that contract by a fraud of the grossest character.

2. But there was another legal effect flowing from the above facts—that is, that as soon as the compromise agreement was made, it being made in reference to the subject matter of the trust, it inured to the benefit of the re-insuring companies, if they chose afterward to adopt it.' This is a purely legal effect, existing or not at the option of the principal. If the *cestui que trust* or principal, wishes at any time to claim the benefit of the trustee's contract, made on the subject matter of the trust, he can do so, the principle of law being that the trustee or agent shall not be allowed to operate for himself, but only for his principal. Nor does this right of the *cestui que trust* depend on there being any fraud in the contract or arrangement. It is entirely immaterial whether there is fraud; but the existence of fraud makes a stronger case for the application of the rule. *Rea v. Copelin*, 47 Mo. 83; *Holridge v. Gillespie*, 2 John. Ch. 30; *Keech v. Sandford*, 1 Lead. Cases Eq. 36; Wharton on Agency, § 240; *VonHurter v. Spengeman*, 2 Green (N. J.) 185; Kerr on Fraud, p. 150; *Motley v. Motley*, 7 Iredell 211; *Yates v. Arden*, 5 Cr. C. C. 526; *Jamison v. Glasscock*, 29 Mo. 195. The following authorities also show that the obligation is imperative on the person

in whom the confidence is reposed, to disclose, throughout, to the principal " every fact, circumstance and advantage" in relation to the matter which may come to the knowledge of the agent, so that the person who reposes the confidence can act at the proper time and with full knowledge of all possible advantages. *McDonald v. Fithian*, 6 Ill. 269 ; *Meeker v. York*, 13 La. Ann. 18; *Bruce v. Davenport*, 36 Barb. 349 ; *Exchange Bank v. Yorke*, 4 La. Ann. 138; *Knabe v. Ternot*, 16 La. Ann. 13 ; *Roorback v. St. B. Co.*, 6 John. Ch. 469 ; *Blount v. Robeson*, 3 Jones Eq. (N. C.) 73 ; *Reeside v. Reeside*, 6 Phila. 507 ; *Wellford v. Chancellor*, 5 Grattan 39 ; *Reed v. Warner*, 5 Paige, 650 ; *Reimers v. Ridner*, 2 Robt. (N. Y.) 7. The action of the agent is void, as being against the policy of the law, which will not permit an agent to deal for himself on the subject matter intrusted to him, unless the principal chooses to adopt the acts of the agent. If he chooses to adopt them, they inure, with all their advantages, to the principal's benefit. If the principal does not adopt them they are void. *McKinley v. Irvine*, 13 Alab. 681 ; *Walker v. Palmer*, 24 Alab. 358 ; *Banks v. Judah*, 8 Conn. 145 ; *Matthews v. Light*, 32 Me. 305 ; *Copeland v. Merc. Ins. Co.*, 6 Pick. 198 ; *Moore v. Moore*, 5 N. Y. 256 ; *Segar v. Edwards*, 11 Leigh (Va.) 213 ; *Galbraith v. Elder*, 8 Watts 81; *Sweet v. Jacocks*, 6 Paige 355 ; *Ringo v. Binns*, 10 Pet. 270; *Rankin v. Porter*, 7 Watts 387; *Church v. Sterling*, 16 Conn. 389 ; *Cleavinger v. Reimar*, 3 W. & Serg. 487. From the above authorities it follows that if there was any acquiescence in or ratification of the agreement of July 24th, 1872, the benefits of that agreement inured to the defendant.

3. But on an entirely distinct ground from the above the effect of the agreement made between the United States Insurance Company and Hening & Pearce, was to release the defendant. The defendant stands in the relation (as our Supreme Court says in the Phœnix case cited below) of a party answerable over, a guarantor, a surety. Now it is well settled that whenever by an agreement with

the creditor the terms of the obligation are changed or varied, the surety, or party liable over, is thereby discharged. A binding agreement to merely give time, will discharge the surety, as in the familiar case where the holder of a note gives time to the maker and thus discharges the indorser. *King v. Baldwin*, 2 John. Ch. 554; *s. c.*, 17 John. 384. Nor does it matter whether the change in the terms of the obligation is detrimental to the surety. *U. S. v. Simpson*, 2 Pa. 437. Yet every change causing detriment releases the party liable over. The principle is one of general application and will hold good in every instance in which the surety is placed in a worse position by the wrongful act of the creditor. *Miller v. Stewart*, 9 Wheat. 680; *Torry v. Bank*, 9 Paige. 649; *Birck-head v. Brown*, 5 Hill 640; 2 Am. Lead. Cas. 348; *Polak v. Everett*, 3 Cent. Law Jour. 307.

According to the repeated decisions of our Supreme Court and to all the above authorities, if the defendant acquiesced in or ratified the agreement of July 24th, 1872, the legal effect of such ratification was to make the benefit of that agreement inure to the defendant. By that compromise the United States Insurance Company got a full discharge from liability by paying $27,000. By that agreement it was forever saved harmless from any loss or payment by reason of any judgment. The very agreement recites that a settlement of any judgment which may be rendered in said suit, or any suit, is "hereby made and agreed on." Then Hening & Pearce agree and bind themselves to release said company from any judgment which may be recovered in said suit. Now, as under the above authorities, all the benefits of the agreement accrue directly to the principal, just as if its name were inserted in the agreement in place of the name of the agent, this defendant cannot be liable at all if there was any consent, acquiescence or ratification. If, indeed, the defendant were strictly liable for a *pro rata* share of the amount to be paid by the United States Insurance Company, the

defendant might be liable for one-sixth part of $27,000; but the only claim is that it is liable for the sixth $20,000; and as by the compromise its liability was never reached, it is bound to pay nothing.

4.   The above arguments are entirely irrespective of the question of fraud; and show that if the compromise agreement was assented to or acquiesced in, the plaintiffs have no case.   But, in truth, the compromise agreement was on its face fraudulent in law, and nothing but an express assent, with full knowledge of all its terms and their effect, could bind defendant to it, under any circumstances. It is not pretended that there was any assent or even knowledge of the agreement of July 24th, 1872, on the part of the defendant till after it was made and delivered. Our propositions under this head are—*a*. The agreement of July 24th, 1872, was on its face fraudulent; and because of the fraud, the effect of making and carying it out by the United States Insurance Company was to release defendant.   *b*. This agreement provides, by necessary implication, that it (the agreement) shall be kept from the knowledge of the United States Court; accordingly the judgment was in law, fraudulent and void by virtue of the agreement.   *c*. The doctrine of ratification or subsequent acquiescence has nothing to do with this case; and if there could be any ratification, it could be only by express assent, and not by mere inaction or failure to dissent.

The agreement of 1872 contemplated and provided for a fraud on a court of justice, and this was an essential point of said agreement and necessary to carry it out. The agreement was not fully executed till this fraud was perpetrated on the court; but when executed, the judgment was fraudulent and void.   As this fraud appeared in the case and by plaintiffs' own witness, who testified that the plot was carried out by concealing the agreement from the court, and that the court was allowed to try a feigned and sham issue, as if it had been a real one, the judgment should have been excluded from the jury.   *People v. Le-*

*land*, 40 Ill. 118; *Gardner v. Goodyear D. V. Co.*, 6 Fisher's
Pat. Cas. 329; *Kohn v. La. Ins. Co.*, 15 La. 86.

*Martin & Lackland* for appellant.

The contract of July, 1864, contained, among others,
a covenant on the part of the re-insurers to pay their *pro
rata* proportion of any judgment, provided the United
States Insurance Company should fail in its defense and
be made liable by such judgment upon the claim. As
a consequence of this provision, the re-insurers surrender-
ed and released to the United States Insurance Company
the important right belonging to them as re-insurers, to
contest any suit or claim against them as re-insurers by
that company. Certainly no one will contend that after
the execution of this contract the United States Insurance
Company could have turned round the next day, and
brought suit against them. Upon the execution of this
agreement the United States Insurance Company for the
first time assumed a relation of trust towards the re-insur-
ers. The trust consists in this, that the United States
Insurance Company could be sued by Hening & Woodruff;
and that company had to defend that suit in its own name
irrespective of any contract of assistance; and in consider-
ation that it would defend the suit of Hening & Woodruff
for the $120,000, the re-insurers surrendered to the United
States Insurance Company the right to defend in the usual
way any suit against them for $100,000; thereby accepting
as a full substitute for their rights of defense as re-insur-
ers, the contemplated defense of the United States Insur-
ance Company in the suit of Hening & Woodruff. It is
important to bear in mind this distinction, viz: that the
re-insurers did not appoint the United States Insurance
Company as their agent to manage and control their de-
fense on their policies, but that they surrendered and
agreed to forego such defense in consideration that the
United States Insurance Company undertook and agreed

to defend and resist in its own name the suit or suits for $120,000 against itself. It undertook, in consideration of the surrender as stated, to defend its own liability. This was to be done for the benefit of the re-insurers as well as itself.

Now, this is an active trust, and so appears in the contract. The United States Insurance Company was to employ counsel, and the defense was to be conducted and managed by it alone. The trust was also irrevocable, and after it was created the re-insuring companies had no right to interfere in the conduct of and management of the case in any manner whatever. That part of the trust was given to the United States Insurance Company, and the re-insurers had nothing to do but to pay expenses when called on, and pay their *pro rata* share of the insurance whenever the United States Insurance Company failed in its defense and became liable by a judgment. The eventual liability of the re-insurers for $100,000 depended upon the faithful discharge, by the United States Insurance Company, of the trust assumed by it in relation to the Hening & Woodruff claim.

The object and purpose of the creation of the trust was to resist and defend the suit, not to settle or compromise it. It is not a case of agency. The defendant did not appoint the United States company its agent. The contract was that that company should defend in good faith the claim against itself, in its own name, and by its own attorneys. It is also no agency, because, after the contract was signed the defendant could not discharge either the United States company or the attorneys employed by it. Neither could it abrogate or revoke the privileges and duty contained in the contract. It was irrevocable in like manner as every trust for the advantage of the beneficiary.

2. A privity grew up between the re-insurers and the United States Insurance Company in relation to the suit of Hening & Woodruff, as proceeding from this contract

of trust. It cannot be treated as a simple notice to defendant. Manifestly, after a notice is given, the re-insurer can come forward and regulate, by special arrangement, the exact terms of his relation of privity to the pending suit, provided this is done by contract with the insured. When the privity is established by notice, we go to the general law of warranty to ascertain its effect. When the privity rests upon special contract, we must seek its character, scope and effect from the contract. Now this is precisely what was done in this case. After notice of the claim, the re-insurers came forward and entered into a compact of privity with the United States Insurance Company, as set out in the contract of July, 1864. The object, inducement and consideration of the compact are all clearly defined, and we perceive that it converted the United States Insurance Company into a trustee for the benefit of the re-insurers in respect to the conduct and management its own lawsuit. It must follow, therefore, that any act of fraud or bad faith on the part of the United States Insurance Company in relation to the subject matter of the compact of privity, strikes down the privity itself; and avoids the beneficial results claimed by the party violating it. In other words, the United States Insurance Company, after a betrayal of the trust and breach of its most important obligations resting on her, cannot claim as against the re-insurers the benefits which would have inured to her had she carried on her obligations in good faith. The beneficial results claimed by her, consist in the contemplated advantages of the privity contained in the compact itself. The record would be evidence against the re-insurers within the limits of the compact. If the compact provided for a liability in a certain contingency, then the record of the suit would not establish an absolute and unconditional liability. The condition or contingency must happen to make it evidence.

3. The compromise settlement of July 24, 1872, was a fraud upon the relation of privity established by the

contract of July 1864, which avoided and annulled the privity and the beneficial results inuring, to the United States Insurance Company by virtue of the privity. In other words, the United States Insurance Company, after its fraud upon the re-insurers, cannot insist that the re-insurers were privies to the suit of Hening & Woodruff, or that the judgment in said suit is binding upon them. That the compromise settlement was a fraud upon the re-insurers is apparent. ` a. It was a secret settlement, months before the day of trial, of the whole claim in controversy. The only subject matter the court could pass upon consisted of this claim against the United States Insurance Company. The precise thing the United States Insurance Company undertook in July, 1864, to resist and defend was this identical cause of action against itself. b. An appeal by the United States Insurance Company was impossible, because there is a stipulation in the settlement that Hening & Woodruff should satisfy any judgment that should be recovered. We do not contend that a trustee is bound under all circumstances to appeal. It is a matter resting in his sound discretion. But he violates his duty as trustee when, in advance of the time for exercising his discretion, he surrenders or bargains the right to exercise his discretion. c. The settlement, was obtained by a sale to Hening & Woodruff of the claims of the United States Insurance Company against the re-insurers. The main object the re-insurers had in becoming privies to the suit was to secure a successful defense of that suit, which would inure to them as a defense or satisfaction upon the claim against them as re-insurers. d. The United States Insurance Company was not an agent of the re-insurers defending a suit against them. She was primarily bound to pay the whole $120,000, and was without hope of remuneration for at least $20,000, and as much more as the insolvency of the re-insurers might leave unpaid by them. She was intrusted with the defense under the contract of July 18th, 1864, because of her great interest in the event of

the suit.  She was a trustee as to the re-insurers, and was made so because of her interest in the subject matter of the trust.  The re-insurers had the right to rely upon this great interest as their chief security for a faithful and vigorous defense.  This security was gone before the trial commenced.  Nay, the spectacle is worse than this.  The transfer of the claims against the re-insurers was conditional, depending for consummation upon the entry of a judgment.  Therefore from the date of the compromise settlement, until the judgment, the United States Insurance Company was the trustee of Hening & Woodruff in respect to these very claims, holding them for their use. She could not sell or transfer them to any one else, having made a conditional sale to Hening & Woodruff.  Neither could she release them to the re-insurers themselves.  Here, then, we have the spectacle of the United States Insurance Company starting out in this law-suit as the trustee of the re-insurers, and winding up as the trustee of Hening & Woodruff, the common enemy.

4.  Measure of damages.  The court erred in not giving defendant's instruction as to the measure of damages.  The rule of law governing this contract of indemnity is as follows :  If the insurer brings his action before payment by himself, his measure of damages is his liability. If he brings it after payment, his measure of damages is the amount paid by him—the amount which satisfied his liability.  *Mutual Fire Ins. Co. v. Andes Ins. Co.*, 4 Ins. Law Jour. 820 ; *s. c.*, 3 Cent. Law Jour. 15 ; *Pentz v. Receiver*, 9 Paige 568; *In re Republic Ins. Co.*, 8 Bank. Reg. 197 ; *Norwood v. Resolute Fire Ins. Co.*, 47 How. Prac. 43 ; *Blackstone v. Allemania*, 4 Daly 299 ; *Lawless v. Collier*, 19 Mo. 480.

*Geo. A. Madill* for appellant.

1.  The legal effect of the agreement of July, 1864, was not to reinstate the policy or to subject defendant to any

liability on it as a re-insurer, but was to create a new and distinct agreement, a substitute, whereby the scope and character, as well as the conditions of the defendant's liability for and its relations to this claim were distinctly defined and determined. It was the evident intention of the parties that this agreement should stand in lieu of, be substituted for, the several policies of re-insurance held by the United States Insurance Company as to the claim of Hening & Woodruff. By this agreement, although the claim was defeated, still the defendant was bound to pay its proportion of the expenses of the litigation. No such obligation was imposed upon it by its policy or by the law, if the policy and not the agreement was the foundation of liability, the measure of obligation. Again, by this agreement it was to contribute to the payment of the claim of Hening & Woodruff only in the event of, and not until, a judgment fixing its liability was recovered by them against the United States Insurance Company. If the policy was to remain in force, then it would be bound to pay at any time the United States Insurance Company saw fit to sue it and establish a liability against it under the policy. If the policy and not the agreement created and determined the nature and extent of the defendant's obligation as a re-insurer, then the statute of limitations is a bar to this action, for the loss occurred in 1864, and this suit was not brought until 1875, a period of more than ten years thereafter.

2. But, upon the assumption that the defendant's policy is the ground of its liability to the assignees of the United States Insurance Company, then, in order to make out their cause of action, it was incumbent on the plaintiffs to establish by proofs, among other things, both of the following propositions: 1st. That Hening & Woodruff had sustained a loss of cotton by a peril insured against by the United States Insurance Company, and that such loss exceeded the sum of $100,000. 2nd. That defendant was liable to the United States Insurance Company as a re-in-

surer of that risk, the last named company having complied with the terms and conditions of defendant's policy as to notice of shipment, payment of premiums, and the service of the requisite proofs of loss, or that the defendant had waived such compliance. Nothing short of the proof of both of these propositions will answer the exigencies of the plaintiffs' case. Giving the utmost effect to the judgment against the United States Insurance Company, it is conclusive against this defendant only upon the facts named in the first of these heads. *Strong v. Phœnix Ins. Co.*, 62 Mo. 289. As to the others, they were not involved in the case, and could not be determined. Of these there was no evidence offered in this case, and hence the plaintiffs' case must fail. *Chicago v. Robbins*, 2 Black 418; *s. c.*, 4 Wall. 657.

3. The contract of settlement was, as to this defendant, a breach of duty and of trust by the United States Insurance Company, and a fraud in law.

1st. By it the trustee settled absolutely and forever fully six weeks before the suit it had agreed to resist was tried, all liability on its part on account of this claim which, to induce defendant to constitute it a trustee to defend, it had denounced as "illegal and unjust," and declared ought to be resisted and defended. Is it probable that the trustee, while buying its peace and urging its wares upon Hening & Woodruff, with a view to reduce the money payment as much as possible, decried their worth by insisting they would never be valuable because it intended to resist to the utmost, as it had agreed to do, the recovery of any judgment. This trustee may have been very pure, and may have insisted in one breath that in the trade the proposed assignment of policies ought to be estimated highly, and the cash to be paid made correspondingly small, and in the next breath asserted itself "in favor of a vigorous prosecution of the war" of defense—and intended it! This may all be true in point of fact. But courts have too little confidence in human nature to allow it to subject itself to

such severe temptation, when acting in trust relations, and have too much respect for it to countenance the placing of it in any such unseemly posture. And corporations, though soulless, are yet finite, and ought to be at least as carefully guarded and protected. Hence the law says, has always said, and it is to be hoped always will say, that such a transaction, if invoked in aid of the trustee, who was an actor in it, is void upon its face.

2nd. By this agreement not only is the trustee absolved from all further interest in favor of a vigorous defense, but it, in effect, agrees that there shall be no appeal from any judgment rendered in the suit. Before the agreement of July, 1864, was made, it was liable to the plaintiffs in the suit for the full amount of any judgment rendered. And under the agreement it was bound to pay at least one-sixth of it without aid. After the compromise was signed, it hadn't a penny of interest in it, except to avoid further expense. Before the compromise, it had something at stake to lead it to incur expense, submit to trouble, expend time, to save itself from liability. But the moment it made its peace, every dollar expended by it on that defense was so much lost. For if the defense was successful, it would get nothing back which it had paid, and the re-insuring policies would be valueless to it. If the defense failed, it had nothing further to pay on account of the claim, and the re-insuring policies would be gone to Hening & Woodruff. The more vigorous the defense was made the more it would cost the trustee, and without benefit; the less vigorous, the less it would cost it.

3rd. By the compromise, the bone of contention was changed from a real demand against the trustee for $120,000 to the single purpose of rendering its *cestui que trust* liable, and in this it had not a dollar of interest. And all effected by the trustee without the consent or knowledge of the *cestui que trust*. Yet it remained defendant in the suit. Why? Because by the agreement with its *quondam* adversaries it was bound to do so, in

order to make the contracts of re-insurance available to them.

4. The fraud in law perpetrated upon the defendant by the United States Insurance Company has never been condoned. The record is destitute of a syllable of proof tending to establish such condonation, or any waiver or ratification by the defendant.

*Thomas T. Gantt* for respondents.

It is found by the jury that the defendant assented to and ratified the agreement of July 24th, 1872: and as this agreement was the only defense interposed, or capable of being interposed by the defendant, and defendant having in its own instructions conceded that the paper was no defense if it assented to its terms, it would seem there was really nothing remaining to be tried, and plaintiffs might pause here with confidence, and ask for the affirmance of the judgment.

The contract of July 24th, 1872, did not in its terms, nor by its legal import, disable the United States Insurance Company from defending to the fullest advantage the action at that time pending in the United States circuit court in favor of Hening & Pearce; and if, in point of fact, after the making of that contract, the United States Insurance Company did, in good faith, and with earnestness, continue to defend the action, presenting all the evidence within its power, making no concessions of law or fact, and interposing every objection, then the compromise agreement furnishes no defense to this action. It will be seen that the plaintiffs offered to prove that such a defense was made, but defendant objected and the court excluded the evidence. In the face of this fact the defendant can not claim that the United States Insurance Company in any way relaxed its efforts in the defense. It seems to follow inevitably that the defendant received to the utmost the benefits and advantages it was entitled to look for from

the contract of July, 1864; and if it did so, there is either a confusion of ideas or something which might be more harshly characterized, in this persistent opposition to the plaintiffs' demand. Had it not been for that contract of 1864—if the defendant had not urged the United States Insurance Company to defend the claim, and promised to bear its proportion of the expenses whether the defense was prosperous or unfortunate—the United States Insurance Company could have brought suit at once in 1864, on its contract of re-insurance. Of course, in doing this it would have relinquished its own defense to the action of Hening & Woodruff. But on the other hand it could then have surely limited its own liability to $20,000 (for all the other re-insuring companies were solvent) and would have escaped the protracted litigation which consumed more than eight years and large costs. Clearly, the defendant was largely interested in having the original case defended; and in view of the advantages thus resulting, it made the contract of July 18, 1864.

We think it clear that the defendant could not, by any act of its own, withdraw from that agreement and that all which it was entitled to exact from the United States Insurance Company under that agreement, was a fulfillment of its terms. Those terms demanded, in the language of this court (*Strong v. Phœnix Ins. Co.*, 62 Mo. 289–299), that the contest be carried on in good faith. "The contest is carried on by his consent and acquiescence and for his benefit and protection, and if good faith is observed can there be any reason why the identical question should be litigated twice?"

All the other re-insuring companies were at liberty to come into the compromise arrangement on the same terms as the Marine. If they had done so, the total paid to Hening & Pearce would have been $55,500, paid absolutely and without any reserve, and then the suit would have been discontinued, nothing remaining to be tried. Instead of paying their portion of this smaller sum, the four out-

standing companies took the risk of paying $29,713 each, while the Marine preferred paying $7,000 as a premium for insurance against the risk of paying the larger sum; and it gained by this prudence. That this is what makes the sting of the affair to the appellant is plain. This is the "*lethalis arundo*" which sticks in the side of the appellant. They saved a large sum of money by their provident action. If they had lost by their attempt to save themselves; if after they had paid a sum of money absolutely the claim had been defeated, and it had thus been shown that they had been needlessly cautious, the sagacity of the appellant in refusing to pay such a price for his security would have been conspicuous, and the appellant would have been in high good humor.

That there was no violation of any trust here is plain, first, because there was no trust property or trust fund; second, there was no appropriation of anything; third, no damage to the re-insurers can be, by any possibility, predicated of any action taken by the United States Insurance Company.

The measure of damages fixed by the instruction given by the court at the plaintiffs' instance, is correct. *Hone v. Mutual Safety Ins. Co.*, 1 Sandf. 137; 3 Kent Com., 279; Mashall on Ins., p. 143; 2 Phillips on Ins., sub-section 2752; *Herckenrath v. American Mut. Ins. Co.*, 3 Barb. Ch. 63.

*Geo. P. Strong* for respondents.

1. The document of July 18th, 1864, was executed not to define or in any way limit or extend the liabilities of the re-insuring companies. It did not in the slightest degree enlarge or diminish the rights or liability of the re-insurers, nor did it impose any additional duty upon or increase any liability of the United States Insurance Company. It was prepared simply to furnish clear and lasting evidence that the re-insurers desired to have the claim of

Hening & Woodruff resisted. All those provisions about the re-insurers being liable to pay, and agreeing to pay, each one-sixth of the loss and one-sixth of the costs and expenses, were mere surplusage, or a simple rehearsal of the obligations created by their respective policies of re-insurance.

But for the existence of these policies there would have been no liability, and the paper of July, 1864, neither added to nor diminished the liability of either party. The United States Insurance Company had a right to defend against the claim, or it had a right, if it deemed the claim a valid one, to pay it without a suit, and without asking the consent of the re-insuring companies. Or, if it was sued, it could recover from the re-insurers one-sixth of whatever judgment might be recovered, together with one-sixth of all the costs and expenses of the suit, and in no way could the re-insurers escape this liability for the results of this litigation, but by notifying the re-insured of their willingness to pay without a suit; the judgment thus obtained would be conclusive against the re-insurers, whether they defended or not, unless they could show that the judgment was obtained by fraud or collusion. The same result would follow if the United States Insurance Company had reinsured the whole risk instead of five-sixths in responsible companies, thereby divesting itself of all pecuniary interest in the result of the litigation.

2. The agreement of July, 1872, did not in the slightest degree affect any interest of the defendant. It only dealt with the rights and liabilities of the United States Insurance Company, growing out of its original contract of insurance with Hening & Woodruff, which were in no way involved in, or affected by the policies of re-insurance. The United States Insurance Company was liable for one-sixth of the loss in any event, if Hening & Woodruff could establish their right to recover, and there is nothing in the paper of July, 1864, which ties its hands, or places it under any obligation to remain pecuniarily in-

terested in the result of the suit. The only obligation it
assumed by that instrument was just the same (no more, no
less) than rested upon it without the written instrument;
that was, to defend the suit in good faith if suit was
brought, and honestly to endeavor to defeat the action.
This was all the re-insurer had a right to require, and this
was all the re-insured undertook to perform. If this was
done, the liability of the re-insurer was irrevocably fixed
by the judgment. *Phœnix Ins. Case*, 62 Mo. 298.

3. The claim of defendant that the United States In-
surance Company was bound to remain pecuniarily inter-
ested in the result of the suit finds no support, either in
the language of the document of July, 1864, or in the
relation of the parties. The rights of a re-insurer are in
no way affected, neither enlarged nor diminished by the
circumstance that it has re-insured the entire risk, or that
it has only re-insured one-sixth of the risk. In either case
it can require that a suit, if brought, shall be defended in
good faith, if the insured expects to rely upon the judg-
ment to establish its right to recover against the re-insurer.
*New York State M. Ins. Co. v. Protection Ins. Co.*, 1 Story
458 ; *Hastie v. De Peyster*, 3 Caines 190.

4. The whole question turns upon a matter of fact,
viz.: Did the United States Insurance Company defend
the suit in good faith ? It mattered not how large or how
small an interest it might have in the result of the suit.
If it honestly, though unsuccessfully, endeavored by all
means at its command to defeat the claim of Hening &
Woodruff, the re-insurer was bound by the judgment, and
would not be allowed in any court again to litigate the
same matters. A pecuniary interest is by no means essen-
tial in securing a faithful prosecution or defense of a suit
at law by an agent. The agreement of July, 1872, only
provided for a mode of settling the judgment, if any were
obtained ; and if the best defense that could be made, was
made, how could the defendant in this action be affected,
whether the United States Insurance Company was to pay

the judgment in cash, or made an agreement that Hening & Woodruff should receive part cash, and the remainder in the notes of other parties, or in valid claims on policies of re-insurance? The liability of the re-insurers was created, not by the judgment, but by their policies, and the fact of a loss embraced within the terms of these re-insuring policies. The moment the loss occurred, their liability was fixed. The judgment did not create it. It only ascertained its existence and extent. Why then could not the United States Insurance Company agree to transfer these policies of re-insurance, in discharge of its liabilities, as well as it could transfer any other species of assets?

Defendant assumes that these policies constituted a sort of "trust fund" placed in the hands of the United States Insurance Company, and that in making this compromise it was dealing with trust property for its own advantage, and thereby committing a breach of trust. Nothing can be further from the true theory of the case. These policies were as absolutely the property of the United States Insurance Company as any assets it possessed. It could transfer them to whom it would, without consulting the re-insuring companies, and even against their earnest protest, as freely as if they had been so many negotiable notes. The only trust or agency assumed by the United States Insurance Company, either by virtue of its having re-insurers for a part of this risk, or by virtue of any provision in the document of July, 1864, was that of a simple agent undertaking to employ counsel, and manage through them the defense of that suit. If it did that with fidelity, it performed its whole duty. The only "fraud and collusion" that could affect or destroy the force of the judgment must necessarily grow out of some understanding or agreement between Hening & Woodruff and the United States Insurance Company, that would in some way tie the hands of the insurance company and prevent an honest defense of that suit.

4. The true measure of damages is the amount named in the policy of re-insurance, provided the loss created a liability on the part of the first insurer to the extent of its policy, and it is immaterial whether this loss has been settled in full, or not settled at all, or settled for a per cent. less than the whole amount. *Strong v. Phœnix Ins. Co.*, 62 Mo. 289; *Lee v. Frat. Mut. Ins. Co.*, 1 Handy 231; *Eagle Ins. Co. v. Lafayette Ins. Co.*, 9 Ind. 443.

HOUGH, J.—It is urged by the defendant that the contract of July 18th, 1864, altered the relations of the re-assured and re-insurers, as they existed under the policies of re-insurance, and irrevocably committed to the United States Insurance Company, the defense of the suit brought by Hening & Woodruff against it in the circuit court of the United States, and made said company a trustee as to the policies of re-insurance held by it; that the contract of July 24th, 1872, by which it stipulated for the assignment of said policies in satisfaction of any judgment which might be recovered against it, rendered said company incapable of further conducting such defense; that it was a fraud in law upon the rights of the defendant; that the cause was really settled at the time it was tried, and the judgment obtained therein a collusive one and not binding upon the defendant.

As much of the argument of counsel has been directed to a consideration of the legal effect of the contract of July 18th, 1864, it may be well to briefly advert to the nature of the duties and obligations arising out of the relation of insurer and re-insurer, which existed between the United States Insurance Company and the defendant at the time that contract was entered into. A contract of re-insurance creates no privity between the re-insurer and the original assured. *Herckenrath v. American Mutual Ins. Co.*, 3 Barb. Ch. 63. The re-assured is not obliged, in order to maintain his action against his re-insurer, to show that he has

1. RE-INSURANCE: rights and duties of the parties to the contract: judgment: notice.

paid the loss.   He may at once resort to his action against the re-insurer, and to such action the re-insurer may make the same defense which the re-assured could make against the original assured ; or, the re-assured may await a suit by the first assured, give notice of it to his re-insurer, and, on being subjected to damages, recover them, together with the costs and expenses of the litigation against the re-insurer.   *Strong v. Phœnix Ins. Co.*, 62 Mo. 298 ; *Eagle Ins. Co. v. Insurance Co.*, 9 Ind. 443 ; *Hone v. Mutual Safety Ins. Co.*, 1 Sandf. 137.   In the case of the *New York State Marine Ins. Co. v. Protection Ins. Co.*, 1 Story C. C. Rep. 458, Judge Story, in commenting upon the relation sustained by the re-insurers to the re-assured, said :   " If notice of a suit, threatened or pending, upon the original policy, be given to the re-assurers, they have a fair opportunity to exercise an election whether to contest or admit the claim.   It is their duty to act upon such notice, when given, within a reasonable time.   If they do not disapprove of the contestation of the suit, or authorize the party re-assured to compromise or settle it, they must be deemed to require that it should be carried on ; and then, by just implication, they are held to indemnify the party re-assured against the costs and expenses necessarily and reasonably incurred in defending the suit."

In the case of *Strong et al v. The Phœnix Ins. Co.*, 62 Mo. 299, this court, in commenting upon the foregoing observations of Judge Story, said :   " If a *bona fide* judgment is rendered against the original insurer, and he has contested the matter in good faith for the protection of the re-insurer, and the latter is bound to pay the costs and expenses incurred for his benefit, why is he not equally bound by the judgment?   It would be a singular position to take, to say that the re-insurer was bound by the incident and not by the principal.   The contest is carried on by his consent or acquiescence, and for his benefit and protection, and if good faith is observed, can there be any reason why the identical question should be litigated

twice? The re-assured and the re-insurer stand in the precise relation of all other parties, where there is a liability over, and the result of one litigation binds or concludes both." It will thus be seen that in all cases where the re-insurers do not, after notice of suit threatened or begun on the original policy, disapprove the contestation thereof, the re-assured shall thereby be deemed to have been required by them to defend the same, and such defense when made in good faith, for the protection of the re-insurers, will render any judgment obtained by the original assured in such suit, binding upon the re-insurers, as to all matters which could have been litigated therein, and make them liable also for the costs and expenses of the litigation. It necessarily follows that in all cases where the re-insurers fail, after notice, to participate in the defense, the original insurer, by operation of law, becomes *sub modo* their agent for the management of such defense, and in the conduct thereof is bound to exercise the utmost good faith: and any judgment against him, collusively obtained, would not support a recovery over against the re-insurers.

Such being the relations which the law established between the re-assured and the re-insurers at the time the

2. ——: agreement for resistance construed. contract of July 18th, 1864, was entered into, let us examine the terms of that contract and see wherein it varied their respective duties and obligations. The contract begins by reciting the claim of Hening & Woodruff against the United States Insurance Company for the sum of $120,000, for cotton burned on the 9th day of June, 1864; also an existing liability on the part of the defendant, and other companies, to the United States Insurance Company, as re-insurers of that company; the belief of all said companies that the claim preferred was illegal and unjust, and a desire that it should be resisted: and in consideration thereof it was agreed that the United States Insurance Company should employ such counsel as it saw proper to manage the defense, and in the event it should succeed in such defense, the re-insurers agreed to

pay their *pro rata* proportion of the attorneys' fees and costs, and in the event the United States Insurance Company should fail in said defense they agreed to pay their *pro rata* proportion of the judgment, attorneys' fees and costs.

It is perfectly plain that under this contract the United States Insurance Company undertook no duty which the law would not have imposed upon it under the circumstances recited in the preamble, if the foregoing contract had never been made. In the absence of any such agreement, it would, under the circumstances, have been its duty to employ counsel and make a faithful defense. It is equally plain that the defendant incurred no obligation which the law did not impose upon it as re-insurer, saving and excepting the stipulation to pay its share of the expenses of the suit, in the event the defense was a successful one : for it was already bound to pay its proportion of any judgment which should be fairly obtained against the United States Insurance Company, together with its share of the expenses. Such liability was one of the existing facts recited in the preamble. With the exception noted, therefore, this contract is nothing more than a recital of the then existing condition of things, and an enduring memorial thereof. This contract does not, in any particular, supersede the contracts of re-insurance, but simply recognizes the duties and obligations flowing from the policies and arising out of the circumstances of the case. The additional obligation assumed by the re-insurers in respect to the fees of counsel, was supplemental in its nature and did not in any way affect the policies. It could as well have been entered into by itself on a simple notice to defend, and in such case it is plain that the policies would have remained unaffected. If the re-insurers, under the circumstances recited in the contract, had entered into no agreement with the United States Insurance Company for the defense of the suit, the defense thereof would have been as fully committed to that com-

pany as it was by the terms of the contract. But it is very clear that in such case the re-insurers would not, by their silence or inaction, have irrevocably committed such defense to the re-assured. A failure to come in in the beginning, would have constituted no abandonment of their right to defend. At any time during the progress of the cause, they would have been entitled, as parties who were to be bound by the judgment, to interfere for the protection of their own interests. So, under the contract, the defense of the suit was committed to the United States Insurance Company, but not irrevocably so. There was no stipulation for the exclusive right to defend the suit, nor was there any consideration for such a grant of authority. The United States Insurance Company gave nothing, promised nothing, for the exclusive and irrevocable power and authority to defend against the claim of Hening & Woodruff, and we strongly incline to the opinion that after the agreement to make common cause in the defense of the suit, and the stipulation that the United States Insurance Company should employ the attorneys and the re-insurers should share the expense of their employment, the attorneys employed represented the re-insurers as well as the re-assured. They were then as fully identified with the cause as it was possible for them to be: as much so as if they had themselves employed the attorneys and the United States Insurance Company had, under an agreement to that effect, contributed its share of the expense. If this view be correct, it is quite evident that the re-insurers are conclusively bound by the judgment rendered against the United States Insurance Company, notwithstanding the agreement of July, 1872.

But conceding that the attorneys employed under the agreement of July 18th, 1864, were not the attorneys of the re-insurers, and did not represent them, but were the attorneys solely of the United States Insurance Company, the re-insurers were clearly at liberty to participate in the defense of the suit whenever they felt it to be their inter-

est to do so, notwithstanding the contract of 1864. The United States Insurance Company was, at most, the agent only of the re-insurers to make defense for them, so far as their interests were concerned, and a permanent pecuniary interest in the result of the litigation on the part of said company, was not essential to the creation or continued existence of such agency. Such agency might, with equal propriety, have been created and continued until the close of the litigation, although the United States Insurance Company had re-insured its entire risk. The creation of this agency, conceding it to be such, and this is the most that can reasonably be claimed by the defendant, was undoubtedly founded upon the trust and confidence reposed by the re-insurers in the purpose and undertaking of the United States Insurance Company to honestly, and in good faith, defend the suit; and the real inquiry at last is, whether such defense was made, or whether the trust was disappointed and the confidence abused? and this brings us to a consideration of the nature and effect of the contract of July 24th, 1872, which contract, the defendant contends, disabled the United States Insurance Company from making a genuine defense.

This contract has been denominated a "contract of settlement," and declared by the counsel for defendant to 3. ———: compro-  be a settlement of the controversy involved
mise agreement
construed.     in the litigation between Hening & Woodruff and the United States Insurance Company. This, we think, is an erroneous view of that contract. The contract did not settle the controversy; that was left to be settled by an actual trial of the suit then pending in the circuit court of the United States. The contract simply provided for the satisfaction, in a designated way, of any judgment that might be recovered against the insurance company. This could be done and still the suit could be fairly and honestly defended. This is no unusual thing in litigation. Parties not unfrequently agree that in the event of a recovery the judgment shall be satisfied in a particular way.

No duty, the performance of which the re-insurers had a right to demand of the United States Insurance Company, was required to be violated or neglected by the terms of this contract. It created no conflict between the duty of the United States Insurance Company and its interest. No right of the re-insurers was bartered away; all the re-insurers had a right to demand of the United States Insurance Company was an honest defense, and this contract did not disable them from making such defense. It was not essential, in order to make such defense, that it should have a substantial interest in the controversy. For, if that be so, and an insurer re-insures his entire risk, and the re-insurers fail to come in and defend, after notice to do so, no judgment can be obtained which will be binding on the re-insurers. The validity of the judgment, for the purpose of a recovery over, does not depend upon the absolute interest of the original insurer, but upon the fact that the suit against him has been honestly and fairly defended. Plaintiffs offered to show that such a defense was made by the eminent counsel who defended the original suit, notwithstanding the contract of July 24th, 1872, but the testimony was excluded at the instance of the defendant.

Furthermore, it clearly appears that for about a month before the trial of said cause the defendant was fully aware of the existence of the contract of July, 1872, extinguishing the substantial interest of the United States Insurance Company in the controversy then pending in the United States court, and having taken no steps to interpose a defense for itself, or to prevent any further defense of said cause by said company, it is not now at liberty to deny its capacity to make such defense. Disqualified to make the defense it certainly was not, but if the defendant felt that all inducement to a vigorous and faithful defense was destroyed by reason of the divestiture of its interest in the subject matter of the controversy, and it did not wish to risk the issue of a trial under such circumstances, as a party who was to be bound by the judgment, it certainly

had the right to bring that fact to the attention of the United States court and to assume control of the litigation for the protection of its own interests. Having failed to do so, it must be considered as having acquiesced in the right of the United States Insurance Company to make the defense, and in the absence of all testimony of any fraud or want of good faith on the part of said company, or its attorneys in making such defense, it must be held bound by the result of the suit. And this view of the case is substantially presented by the second and fourth instructions asked by the plaintiffs.

We agree with the court of appeals in thinking that the case was tried on a theory prejudicial to the rights of the plaintiffs, and that no material error was committed against the defendant.

We see no error in the rule adopted by the circuit court as to the measure of damages. The extent of the liability of the re-insurer is not contingent upon the amount paid by the re-assured, nor upon any payment whatever by him. When a loss occurs which is covered by the policy of re-insurance, the re-assured is entitled to recover, from the re-insurer, not what he has paid, but all that he has become liable to pay by reason of such loss. This is a necessary consequence of the rule that the re-assured may maintain an action against the re-insurer without showing that he has paid the loss. *Strong v. Phœnix Ins. Co.*, 62 Mo. 289; *Hone v. Mutual Safety Ins. Co.*, 1 Sandf. 137; *New York State Marine Ins. Co. v. Protection Ins. Co.*, 1 Story C. C. 458; *Eagle Ins. Co. v. Lafayette Ins. Co.*, 9 Ind. 443; *Blackstone v. Alemannia Fire Ins. Co.*, 56 N. Y. 104; *Herckenrath v. American Mut. Ins. Co.*, 3 Barb. Ch. 63; *Carrington v. Commercial Fire & Marine Ins. Co.*, 1 Bosw. 152. We are of opinion, therefore, that the judgment of the court of appeals should be affirmed. All concur.

AFFIRMED.